# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| TERRY TRAYLOR, | Civil Action No. 16-7691(MCA) |
| Plaintiff, | |
| v. | OPINION |
| GARY LANIGAN, et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Terry Traylor is currently civilly committed to the East Jersey State Prison Special Treatment Unit (STU) in Avenel, New Jersey, pursuant to the New Jersey Sexually Violent Predator ("SVP") Act, N.J. Stat. Ann. § 30:4-27.24 et seq. Plaintiff has brought this civil rights action pursuant to 42 U.S.C. § 1983, and appears to seek class certification on behalf of himself, five other individual plaintiffs, and all those "similarly situated." Based on his affidavit of indigence, the Court granted Plaintiff's application to proceed *in forma pauperis* ("IFF") pursuant to 28 U.S.C. § 1915 and ordered the Clerk of the Court to file the Complaint.[1] (ECF No. 3.)

At this time, the Court must review the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), to determine whether this action should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant

---

[1] The Court granted IFP status to Plaintiff, but did not grant such status to Plaintiffs Geraldo Morales, Vincent R. Sanford, Thomas Flanagan, Ralph Waldron, or David Carson, as these individuals have not signed the Complaint or submitted IFP applications.

1

who is immune from such relief. For the reasons set forth below, the Court will dismiss the § 1983 claims for failure to state a claim for relief. To the extent his Complaint can be construed as a motion for class certification, the Court will deny that motion light of the Court's dismissal of the § 1983 claims. The Court will likewise deny the motion for *pro bono* counsel. (ECF No. 2.) Plaintiff may file an Amended Complaint within 30 days of his receipt of the Court's Opinion and accompanying Order.

## II. FACTUAL BACKGROUND

### a. The Current Action

Plaintiff has sued Gary Lanigan, Elizabeth Connolly, Sherry Yates, James Slaughter, Merrill Main, Heather Burnett, as well as unidentified John and Jane Doe Treatment Team Members, for alleged violations of his constitutional rights in connection with his civil commitment in the STU. The Complaint provides the following salient facts about Plaintiff's civil commitment as an SVP:

> Plaintiff Terry Traylor was involuntarily civilly committed pursuant to the (SVPA) on or about May 31, 2002 by the Superior Court of Essex County, Newark, NJ. Terry Traylor has not consented to participate in any mental health treatment program provided by (DHS). Terry Traylor is appealing his commitment order and has refused treatment or to participate in any test administered by the Defendants. Nevertheless, due to the systemic deficiencies in the (SVP) program described [in the Complaint]. Resident Terry Traylor has never received adequate counseling or treatment that might yield a realistic chance for his release.

(*Id.* at ¶ 6(C).)

As explained below, Plaintiff's Complaint alleges three primary types of constitutional violations: (1) allegations regarding alleged deficiencies in the mental health care provided to SVPs; (2) allegations that the conditions at the STU are more restrictive than prison conditions;

2

and (3) an allegation that SVPs (Plaintiff and others similarly situated) have a constitutional right to refuse sex offender treatment and should not be retaliated against for refusing treatment.

With respect to the first type of claim, the Complaint alleges that this action is brought to redress "the complete and utter failure of the Defendant's and those acting under their control or direction to provide adequate and meaningful mental health treatment to the named Plaintiff's and all others similarly situated. . . ." (*Id.* at ¶ 6(A).) The Complaint describes the following failures to provide "meaningful mental health treatment":

> (a) To properly train staff regarding the treatment of sexual deviance
> (b) To provide a coherent and meaningful individualized treatment program for each detainee with understandable goals and a road map showing steps necessary for improvement and release
> (c) To make adequate provisions for the participation of detainees; family members in rehabilitation efforts, including permitting family visits with reasonable frequency and allowing prompt telephone access to detainees in case of family emergency;
> (d) To draft and implement fair and reasonable grievance procedures and behavioral management plans;
> (e) To afford reasonable opportunities to all residents for Educational, Religious, Vocational, and recreational activities;
> (f) To cease requiring as a precondition to participation in all but the most basic treatment offered by (DHS), and therefor[e], as a predicate to release, that the Plaintiffs and others similarly situated detainees to admit to comprehensive listing of the real and imagined of future criminal prosecution for the other crimes in violation of the Plaintiff's Fifth Amendment right against self-incrimination applies to the States by the Fourteenth Amendment; and
> (g) To institute procedures to guarantee appropriate therapist/patient confidentiality.

(*Id.* at ¶ 6(O).) Plaintiff alleges that instead of providing treatment . . . Defendants erect one arbitrary barrier after another to prevent Plaintiff's from progressing to the point where the Treatment Team will recommend their release, including requiring participants in the program to confess to crimes they did not commit." (*Id.* at ¶ 6(Q).)

3

With respect to the conditions of confinement claim, Plaintiff's Complaint alleges that he and other SVPs are "held in conditions that are more restrictive than the conditions under which [they] were confined when they were incarcerated as criminals prior to their civil commitment under the [SVPA]." According to Plaintiff's Complaint, "[t]hese conditions are unrelated to the security or treatment needs of the SVP population and are purely punitive in nature and continue to be enforced as retaliatory measures." (ECF No. 1, Compl. at ¶ 6(R).)

The relief section of the Complaint focuses primarily on Plaintiff's contention that he has a constitutional right to refuse treatment and should not be retaliated against for refusing to participate in treatment.[2] Plaintiff asks the Court to rule that Plaintiffs have a [c]onstitutional [r]ight to refuse treatment and not to be punished for exercising that [r]ight." (*Id.* at ¶ 7(A).) Plaintiff also asks the Court to

> Order that Resident Terry Traylor and all other similarly situated are not be denied employment, their property, and personal needs, etc., for affirming the right not to participate in any mental health treatment program. And by during [sic] so like all other similarly situated are denied [j]obs, loss of property, and being segregated in a housing Unit and not allowed to participate with other [r]esidents just for affirming a right not to participate.

(*Id.* at ¶ 7(B).) He further seeks a restraining order/injunction to prevent DHS from using "Treatment Probation/Treatment Refusal to punish and retaliate when their wishes are not followed, to the letter" and to prevent retaliation and intimidation by DHS against those detainees who "affirm the right not to discuss the offenses they are charged with" and refuse to participate in mental health treatment. (*Id.* at ¶ 7(C).) Plaintiff also asks the Court to order DHS to "develop specific policies" for the treatment of those detainees who are still challenging their

---

[2] In the relief section, Plaintiff also asks the Court to order that the "DOC [p]ersonnel be trained to act more professionally in a therapeutic environment." (*Id.* at ¶ 7(D).)

4

convictions and/or civil commitment, and enjoin DHS from intimidating or bullying a resident into speaking about his criminal sexual history against the advice of his attorney. (*Id.* at ¶ 7(F).) Plaintiff also asks the Court to enjoin the Treatment Team from "classifying any resident as a Treatment Refuser" if that resident is pursuing an appeal or collateral attack on his conviction, is not yet committed, and has been advised by the Court or counsel not to discuss his case. (*Id.* at ¶ 7(G).)

### b. Plaintiff's Prior Action

At the beginning of his Complaint, Plaintiff refers to a "previously dismissed federal civil action," which is captioned "*Edward Salerno, et al[.] v. John Corzine, et al*[.]" (ECF No. 1, Compl. at ¶ 2.) Plaintiff appears to state, however, that the issue or issues presented in the present action "w[ere] never addressed" in the prior action. (*Id.*)

On June 13, 2007, Plaintiff Terry Traylor filed a Complaint in this District pursuant to 42 U.S.C. § 1983, alleging that his First and Fifth Amendment rights were violated by Defendants who were involved in his treatment at the STU. Plaintiff alleged that the Defendants attempted to force him to participate in treatment and make self-incriminating statements. Defendants then allegedly penalized Plaintiff by revoking his institutional privileges because he refused to cooperate with Defendants. *See Traylor v. Main*, No. CIV.A. 07-CV-2751DMC, 2007 WL 4557650, at *1 (D.N.J. Dec. 17, 2007), *rev'd in part and remanded sub nom. Salerno v. Corzine*, 449 F. App'x 118 (3d Cir. 2011). The Honorable Dennis M. Cavanaugh, U.S.D.J., screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed the Fifth Amendment claim against compelled self-incrimination but permitted Plaintiff's First Amendment claims to proceed. (*See* Civil Act. No. 07-2751, ECF No. 3.)

The named Defendants in Civil Action No. 07-2751 filed a Motion to Dismiss. Judge Cavanaugh granted Defendants' Motion to Dismiss on the basis that the named Defendants were entitled to qualified immunity because reasonable officials would not consider self-accusatory sex offender treatment programs to be unconstitutional. *Traylor*, 2007 WL 4557650 at *2-3. In a consolidated appeal, the Third Circuit affirmed the dismissal of Traylor's damages claims, but reversed the District Court's orders dismissing Traylor's § 1983 claims for prospective relief.[3] *Salerno v. Corzine*, 449 F. App'x 118, 123 (3d Cir. 2011). The court remanded the cases for determination of Plaintiffs' First Amendment claims for prospective relief. *Id.*

After the cases were remanded, they were consolidated before the Honorable Faith S. Hochberg. *See Salerno v. Corzine*, No. CIV. 06-3547, 2013 WL 5505741, at *2 (D.N.J. Oct. 1, 2013), aff'd, 577 F. App'x 123 (3d Cir. 2014). Following remand, the parties filed cross-motions for summary judgment. The District Court summarized the parties' arguments as follows:

> Plaintiffs principally assert that their First Amendment right against compelled speech is violated because Defendants require Plaintiffs to discuss their sexual histories and past sex offenses during the course of group therapy. Plaintiffs continue to invoke their First Amendment rights in refusing to talk about their sex lives and sex offense history. As a result of their refusal, Plaintiffs allege that they have been denied certain privileges or incentives afforded to other residents who comply with the treatment program requirements to discuss their sexual histories. Most significantly, Plaintiffs allege that they have been unable to advance through the treatment phases, which has increased their detention indefinitely, as a consequence of their refusal to discuss their past sexual histories. Plaintiffs contend that these deprivations of liberty are so great as to rise to the level of compulsion that violates the First Amendment.
> On the other hand, Defendants argue that Plaintiffs' First Amendment rights are not infringed by the withholding of certain privileges for refusing to participate in a program that uses an "incentive-for-participation system" to foster standard sex offender treatment. Citing Dr. Main's professional opinion, Defendants

---

[3] The consolidated appeal included claims by Traylor, Edward Salerno, and Joseph Aruanno.

> maintain that "admission to and discussion of all sexual offenses is critical to successful treatment" of residents at the STU. Dr. Main opines that incentives to cooperate are necessary to induce an otherwise "treatment-resistant" group to participate in a treatment program, and that giving treatment "refusers" the same privileges as treatment participants would undermine the entire treatment program.

*Salerno*, 2013 WL 5505741, at *5.

The District Court granted summary judgment to the Defendants, which the Third Circuit summarized as follows:

> The District Court granted the Defendants' motion for summary judgment. With respect to Salerno and Traylor's compelled speech claim, the District Court determined that "[t]he loss of such privileges as an institutional job, a DVD player, and a CD player, for non-participation does not implicate a constitutional deprivation of liberty so severe as to violate Plaintiffs' First Amendment right against compelled speech." *Salerno v. Corzine*, Nos. 06–3547, 07–2751, 2013 WL 5505741, at *11 (D.N.J. Oct. 1, 2013). Additionally, the District Court concluded that Salerno and Traylor's indefinite detention did not amount to compelled speech. In pertinent part, the District Court explained that the "duration of [Salerno and Traylor's] detention is ... determined by the New Jersey courts," not by Defendants, and it "is not determined by whether they exercise their First Amendment right against compelled speech, but instead by whether they continue to present a risk of sexually reoffending." With respect to Salerno and Traylor's retaliation claim, the District Court held that Defendants did not retaliate against Salerno and Traylor because the revoked privileges were insufficient to "deter a person of ordinary firmness from exercising his constitutional rights." *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001)).

*Salerno v. Corzine*, 577 F. App'x 123, 127 (3d Cir. 2014). The Third Circuit "affirm[ed] the judgment of the District Court, substantially for the thorough and persuasive reasons expressed in Judge Hochberg's written opinion." *Id.* at 128. Petitioner's Petition for writ of certiorari was denied on January 12, 2015. *Salerno v. Corzine*, 135 S. Ct. 973 (2015).

7

## III. STANDARD OF REVIEW

Under the Prison Litigation Reform Act of 1995 (the "PLRA"), district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). As noted above, the PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Amended Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The complaint must also allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (citation omitted).

Courts are required to liberally construe pleadings drafted by *pro se* parties. *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, *pro se* litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

IV. **ANALYSIS**

　a. **Plaintiff's Attempt to Bring the Action on Behalf of Additional SVPs**

Where more than one *pro se* party seeks to join in a complaint against a government official or entity, the plaintiffs may <u>prepay</u> a single $400.00 filing fee <u>or</u> seek *in forma pauperis* status. *See Hagan v. Rogers*, 570 F.3d 146, 150 (3d Cir. 2009); *Miller v. New Jersey*, No. 13-2018, 2013 WL 2149692, at *2 (D.N.J. May 16, 2013) (citations omitted). In the event that multiple *pro se* parties seek to join as plaintiffs and they do not prepay the $400 filing fee, then each plaintiff must submit a complete application to proceed *in forma pauperis* if he desires the

complaint to be filed on his or her behalf. *See Hagan*, 570 F.3d at 154–55;[4] *Alford v. Wojchiechowicz*, No. CV 15-6750 (PGS), 2015 WL 5771616, at *2 (D.N.J. Sept. 30, 2015) (explaining same).

Here, Mr. Traylor is the only Plaintiff who has submitted an IFP application. As such, as noted above, the Court granted his IFP application. Because the remaining Plaintiffs have not submitted an IFP application or signed the Complaint in this action, the Court will instruct the Clerk of the Court to terminate the additional Plaintiffs listed in the caption until such time that they each submit a complete IFP application and sign any Amended Complaint in this action.

### b. Plaintiff's Section 1983 Claims

The Court construes Plaintiff to raise a number of claims under 28 U.S.C. § 1983 in connection with his treatment and the conditions of his confinement at the STU, which are set forth below.[5]

---

[4] In *Hagan v. Rogers*, 570 F.3d 146 (3d Cir. 2009), the Court of Appeals for the Third Circuit held that prisoners proceeding *in forma pauperis* are not categorically barred from joining as co-plaintiffs under Rule 20 of the Federal Rules of Civil Procedure. Rule 20(a) provides the following regarding permissive joinder of Plaintiffs: "(1) Plaintiffs. Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002). The Court need not decide whether the requirements for joinder are met, as Traylor is the only Plaintiff who has submitted an IFP application. Notably, none of the Plaintiffs have signed the Complaint; however, the Court will construe Plaintiff Traylor's signature on his IFP application as his signature on the Complaint.

[5] By way of background, Plaintiff is confined at the STU pursuant to the New Jersey SVPA, N.J.S.A. 30:4–27.24 et seq., which provides for the custody, care and treatment of involuntarily committed persons who are deemed to be SVPs. An SVP is defined as a person who has been convicted of at least one sexually violent offense and who suffers from "a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined to a secure facility for control, care and treatment." *Id.* Once committed to the STU, an SVP remains there until such time as a state court finds that he "will not be likely to engage in acts of sexual violence," in which case he may be "conditionally discharged." N.J.S.A. 30:4–

10

### 1. First and Fifth Amendment Claims

As laid out in the Factual Background section of this Opinion, Plaintiff asks the Court to declare that he has a constitutional right to refuse sex offender treatment; he further asks the Court to enjoin Defendants from punishing him for refusing treatment. These First and Fifth Amendment claims, as raised in the instant Complaint, were the subject of a prior action by Plaintiff and were litigated to a conclusion in that prior action. Claim preclusion "bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir.2010). Claim preclusion is properly applied where there has been: "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same causes of action." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010). To the extent Plaintiff alleges in this action that Defendants violated his First and Fifth Amendment rights by trying to force him to participate in treatment and make self-incriminating statements, and by revoking his institutional privileges in retaliation for his refusal to participate in treatment, such claims have already been litigated to a conclusion and are thus barred by the doctrine of claim preclusion and shall be dismissed with prejudice.[6]

---

27.32(c)(1). As explained by another Court in this District, "[i]n order to be "conditionally discharged," the individual must establish that he has been successfully treated for the mental abnormality or personality disorder that was the basis for his confinement to the STU. In order for residents to have a meaningful opportunity to work toward a potential release, the Act provides that class members receive mental health treatment, which is provided by the New Jersey Department of Human Services." *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *1–2 (D.N.J. Dec. 4, 2012) (citing N.J.S.A. 30:4–27.34(b)), aff'd, 559 F. App'x 151 (3d Cir. 2014).

[6] In this action, Plaintiff alleges that detainees who are still challenging their criminal convictions or civil commitment should not be penalized for refusing to discuss their alleged crimes, and suggests that he is still challenging his civil commitment order. In this regard, the Court takes judicial notice of the following dates taken from Petitioner's habeas petition filed in this District:

## 2. Fourteenth Amendment Claim of Inadequate Treatment

Plaintiff also appears to assert that Defendants have violated his fundamental right to minimally adequate treatment as a civilly committed sex offender, which arises under the Fourteenth Amendment.[7] The Supreme Court has established that there exists a constitutionally protected right of mentally retarded persons confined at a state institution to minimally adequate treatment. *See Youngberg v. Romeo*, 457 U.S. 302, 316, 319, 322 (1982). In *Leamer v. Fauver*, 288 F.3d 532 (3d Cir. 2002), the Third Circuit held that, since the New Jersey's statutory scheme for sex offenders was predicated on the inmate's response to treatment, that statutory regime created a fundamental due process liberty interest in treatment. *Id.* at 545; *accord Kansas v. Hendricks*, 521 U.S. 346, 368–69 (1997) (inmates housed in prison-like conditions must be afforded a treatment comparable to that provided to other civilly committed persons confined in

---

> On or about February 8, 2002, a final order of commitment was entered by the Honorable Phillip M. Freedman, J.S.C., against petitioner Traylor pursuant to N.J.S.A. 30:4-27.24. (Petition, ¶ 30). Traylor states that he was involuntarily committed on May 31, 2002, to the Special Treatment Unit in Kearny, New Jersey. (Pet., ¶ 35). He appealed from the judgment of commitment, and the New Jersey Appellate Division affirmed the trial court's ruling in a written opinion filed on July 12, 2004. (Pet., ¶ 37). The New Jersey Supreme Court denied certification on February 28, 2005. (Pet., ¶ 38). On or about November 7, 2005, Traylor filed a federal habeas petition, pursuant to 28 U.S.C. § 2254, challenging the same judgment of commitment at issue in this action. *Traylor v. Harvey*, et al., Civil No. 05-5986(JAP).

*Traylor v. New Jersey*, No. CIV.07-1883 WJM, 2007 WL 1303003, at *1 (D.N.J. May 2, 2007).

[7] The Fourteenth Amendment guarantees that "[n]o State [would] deprive any person of life, liberty, or property without due process of law." U.S. Const., Amend. XIV, § 1. This due process guarantee has a procedural and a substantive component; the former bars punishment without the due process of law while the latter protects fundamental rights so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Palko v. Conn.*, 302 U.S. 319, 325 (1937); *see also United States v. Salerno*, 481 U.S. 739, 746 (1987) (substantive due process protects the inmates' fundamental rights and, in addition, guards the inmates against other government conduct so egregious that it "shocks the conscience").

treatment units). Thus, under Third Circuit law, Plaintiff has a substantive due process right in a treatment facilitating his release prospects. *See Roberts v. Velez*, No. CIV.A. 11-1198 SDW, 2011 WL 2745939, at *8 (D.N.J. July 12, 2011); *Miller v. Christie*, No. CIV.A. 10-2397 KSH, 2011 WL 941328, at *7 (D.N.J. Mar. 11, 2011) (finding that the Third Circuit's holding in *Leamer* extends to an involuntarily committed sex offender under New Jersey's SVPA). Under this standard, however, Defendants' actions in denying Plaintiff his statutory right to treatment will be found unconstitutional under the Fourteenth Amendment only if they are so arbitrary or egregious as to shock the conscience. *See Wolfe v. Christie*, No. CIV.A. 10-2083 PGS, 2010 WL 2925145, at *14 (D.N.J. July 19, 2010) (citing *Leamer*, 288 F.3d at 546–47 (substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release").

Here, Plaintiff's Complaint provides a generalized list of deficiencies with respect to the treatment program at the STU. These alleged deficiencies include alleged failures: to train staff about sexual deviance; to provide meaningful individualized treatment programs with clear roadmaps for improvement and release; to make adequate provisions for the participation of detainees in their treatment; to permit frequent visits with family and prompt telephone access for family emergencies; to implement reasonable grievance procedures and behavioral management plans; to afford unspecified opportunities for educational, religious, vocational, and recreational activities; to create procedures to guarantee therapist/patient confidentiality; and to cease requiring detainees to discuss their prior sexual crimes and sexual histories. (ECF No. 1, Compl. at ¶ 6(O).) As currently pleaded, these alleged deficiencies are extremely generic, and

13

do not rise to the level of a substantive due process violation, i.e., conscience-shocking conduct. Plaintiff does not allege that sex offender treatment is denied altogether; nor does he allege that his prescribed treatment has been denied, reduced, or changed for non-medical reasons. *See e.g., Thomas v. Adams*, 55 F. Supp. 3d 552, 576 (D.N.J. 2014) ("when a prescribed medical treatment is denied, reduced, or changed for non-medical reasons, including financial, administrative or logistical, the [denied or reduced] treatment suggests an act of deliberate indifference and amounts to a violation of ... substantive due process with regard to those mental patients whose sole hope for release hinges on obtaining their prescribed" treatment); *Cooper v. Sharp*, No. CIV.A. 10-5245 FSH, 2011 WL 1045234, at *15 (D.N.J. Mar. 23, 2011) (dismissing claim for relief where Plaintiff alleged mere disagreement with treatment program rather than "a categorical denial of therapy and treatment sessions"); *see also Banda v. Adams*, No. 16-1582, 2017 WL 76943, at *2 (3d Cir. Jan. 9, 2017) ("No claim of deliberate indifference is made out where a significant level of care has been provided and all that is shown is that the civil detainee disagrees with the health care provider's professional judgment about what constitutes proper care."). Notably, Plaintiff acknowledges in his Complaint that he has refused and continues to refuse the prescribed treatment because his successful participation in the treatment program requires him to discuss his sexual history, including his criminal sexual history.[8]

---

[8] In that regard, Plaintiff may not recast his First Amendment claim regarding compelled speech (which he has litigated to its conclusion) as a substantive due process violation. Noting its "reluctan[ce] to expand the concept of substantive due process," the Supreme Court has established the "more-specific-provision rule." *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998). Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997) (clarifying prior holing in *Graham v. Connor*, 490 U.S. 386 (1989)); *see also Albright v. Oliver*, 510 U.S. 266, 288 (1994) (J. Souter concurring in the judgment) (describing Court's "rule of reserving due process for otherwise homeless substantial claims" and explaining that "the Court has resisted relying on the Due

Because the facts alleged in the Complaint do not plausibly suggest that Defendants have violated Plaintiff's fundamental right to minimally adequate treatment as a civilly committed sex offender, the Court will dismiss this claim without prejudice.

### 3. Conditions of Confinement Claim

Plaintiff's Complaint also alleges that he and other SVPs are "held in conditions that are more restrictive than the conditions under which [they] were confined when they were incarcerated as criminals prior to their civil commitment under the [SVPA]."[9] According to Plaintiff's Complaint, "These conditions are unrelated to the security or treatment needs of the SVP population and are purely punitive in nature and continue to be enforced as retaliatory measures." (ECF No. 1, Compl. at ¶ R.) Plaintiff, however, has not, except in the most general terms, described the conditions of his confinement, *i.e.*, provided facts to suggest that his the conditions of his confinement as a civil detainee are "more restrictive" than the conditions faced

---

Process Clause when doing so would have duplicated protection that a more specific constitutional provision already bestowed"); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (finding that Plaintiff's allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, and holding that the more-specific-provision rule forecloses Betts's substantive due process claims). Here, Plaintiff has already litigated his claim that sex offender treatment at the STU violated his First Amendment right against compelled speech by requiring him to discuss his criminal sexual history. The more-specific-provision-rule prevents his from recasting this claim as substantive due process violation.

[9] Plaintiff also states in his Complaint that "this action challenges the decision of the Defendants to 'Warehouse' and put out of sight the Plaintiff's and all others similarly situated in attempt to hold them indefinitely and to punish, rather than treat their perceived mental disabilities. It is an Equal Protection Violation." "'[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citing *Sioux City Bridge Co. v. Dakota County, NE*, 260 U.S. 441, 445 (1923)). Plaintiff has not provided facts suggesting that Defendants have engaged in arbitrary discriminatory conduct. To the extent Plaintiff wishes to bring an equal protection claim, he may do so by way of an Amended Complaint.

by prisoners. The state has a duty to provide civilly committed persons with adequate food, shelter, clothing, medical care, and safety measures. *See Grohs v. Yatauro*, 984 F. Supp. 2d 273, 283 (D.N.J. 2013). Furthermore, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, *Bell v. Wolfish*, 441 U.S. 520, 536 (1979); as such, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *See Youngberg*, 457 U.S. at 321–22; *see also Graham v. Sharp*, No. CIV.A. 10-5563 SRC, 2011 WL 2491347, at *8 (D.N.J. June 20, 2011) (stating same). Plaintiff, however, fails to set forth sufficient facts in his Complaint to state a conditions of confinement claim against any of the Defendants. The Court will therefore dismiss this claim without prejudice.

### 4. Leave to Amend

A district court generally grants leave to correct deficiencies in a complaint by amendment. See *DelRio-Mocci v. Connolly Properties Inc.*, 672 F.3d 241, 251 (3d Cir. 2012); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Because it is conceivable that Plaintiff may be able to assert facts showing that his constitutional rights were violated, this Court will grant Plaintiff 30 days to file an amended complaint that (1) is complete on its face and (2) asserts facts showing that one or more named defendant(s) violated or caused the violation of his constitutional rights.[10]

---

[10] Because the Court has dismissed the federal claims, the remaining potential basis for this Court's jurisdiction over any state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over

16

### 5. Requests for Class Certification and *Pro Bono* Counsel

Because the Court has dismissed the § 1983 claims, the Court will deny Plaintiff's request for class certification and his motion for *pro bono* counsel (ECF No. 3) at this time. To the extent he submits an Amended Complaint, Plaintiff may file new motions for class certification and *pro bono* counsel, if appropriate.

## V. <u>CONCLUSION</u>

For the reasons stated in this Opinion, the Court dismisses the § 1983 claims pursuant to 28 U.S.C. 1915(e)(2)(B). In light of the dismissal of the § 1983 claims, the Court also denies Plaintiff's request for class certification and his motion for *pro bono* counsel (ECF No. 3.). With respect to the claims dismissed without prejudice, Plaintiff may file an Amended Complaint within 30 days of the date of the Order accompanying this Opinion. An appropriate Order follows.

_____
Madeline Cox Arleo, U.S.D.J.

Dated: May 31, 2017

---

federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284–1285 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284–1285. Here, it is not clear whether Plaintiff also seeks to bring state law claims for relief; the Court however, has dismissed the federal claims at the earliest possible stage of the proceedings and exercises its discretion to decline supplemental jurisdiction at this time.